Catron, C. J.
delivered the opinion of the court.
1. The instructions given to the'jury, that the title of the defendant was not void, by force of the statutes to suppress champerty and maintenance, is believed to be correct.
2. The charge on the second point was correct. It left the facts fairly to the jury.
3. The charge on the third point, is perhaps slightly objectionable in reference to Stewart Cowan’s executions. Cowan might have been paid the amount due him, and the executions remain valid. A security may pay the creditor his money, and still by contract with the creditor, cause tobe enforced the execution against the principal debt- or, although the execution be jointly against the debtor and security. Such is the spirit of our legislation on the subject *495 of enforcing executions against debtor and security; and so this court held in Gunn and Boyd vs. Tannehill. 2 Yerg. 544. Aside from these facts, the relation of principal and surety not existing, the charge was correct; if the the relation did exist, and the debt was paid with the fraudulent intent set forth by the charge, the sale was colora-ble and void as to Cowan’s executions; and being colora-ble in part, is void, although made by virtue of other valid executions; because a purchase based on partly a fair, and partly a colorable and fraudulent consideration, is within the statute of frauds, for the reasons given in the cases of Darwin vs. Handley, 3 Yerg. 502, and Somerville vs. Horton, 4 Yerg. 541.
4. On the fourth point the charge was remarkably accurate. A third person, purchasing at execution sale, takes a title disconnected frqm the debtor and creditor. The transaction is open and notorious, and the evidence of title is the record of recovery in favor of a third person. ‘ With the possession of property thus acquired, the purchaser may deal as if the creditor had ljever been the owner, or in possession thereof. 2 Starkie 619. If, however, the judgment is a mere contrivance to hinder and delay creditors, and the plaintiff purchases with this intent, the purchase is void.
5. The charge on the fifth point was not objected to by either party, and is not objectionable had it been.
6. On this point arises the only controversy worthy the serious attention of the court., as a revising tribunal, and the only one on which much attention is bestowed. The circuit court was asked to charge, that by the acts of 1784, ch. 10, sec. 7, and 1789, a bill of sale from the •officer making the execution sale, was necessary to vest a title in the purchaser as against the creditors of the execution debtor; and that such bill.of sale must be registered within twelve months from the date of the purchase. That there not having been made any bill of sale for the slaves by the officer who sold them to the Floyds, within twelve months after the sale, they had no title that could *496 enforced as against creditors in a court of law. A ^ bill of sale had been made to the Floyds by the officers, but more than a year after the date of the sale, and after \J 1 they brought suit for the negroes.
On the effect of this bill of sale, and in response to the request to-charge what its effect wras, the court said, “I am of opinion the words, all sales of slaves, include sales under legal process, as well as private sales; and, therefore, that the bill of sale to plaintiffs from the constable, ought to have been made and registered within twelve months, to make it available; and personal notice is of no avail, when the law requires notice from the register’s office, and the records thereof.
This part of the charge took the cause in effect from the jury, and most properly, if the law was correctly charged; for it would have been idle to try the complicated and doubtful matter of law. Are judicial sales within the purview of the act of 1784. The levy of the execution divests the title out of the debtor, and discharges 'the debt as this court has holden. Young vs, Reed, 3 Yerg. Rep. 297; 6 Yerg. Rep. The property being in custody of the law, remains so until the sale is made, when a title immediately vests by the sale. This is evidenced by the levy and return of thesale, which return becomes matter of record, and furnishes a record title, notoriously and openly made, and is the farthest from a secret sale that can well be imagined; and to private gifts and sales, the act has at all times in this-state been holden to apply, so far as my knowledge extends. The acts of 1784, and 1789, ch. 59, sec. 2, were intended to apply only as between vendor and purchaser, to give notoriety to the transfer of slave property. There w'as no necessity for such a provision in cases of judicial sales. Vide 5 Yerg. Rep. 127.
We are told by the act of 1784, that all sales of slaves shall be in writing, attested by at least one credible witness, or otherwise shall not be valid; and shall be proven *497 and recorded within nine months; which, by the act ’ 1 J 1739, is extended to twelve months. If it be true, that a judicial sale .of a slave shall be in writing/this writing is furnished by the levy and return: shall it be attested by a' witness, proved and registered? This cannot have been the intention of the legislature, if it was meant to extend the acts to judicial sales; for after the officer makes the sale, he has no farther title; if he has, the property must rest in him and the custody of the law, until some further step is taken with it. Here another creditor has seized upon the property and sold it, and the defendant’s claim under such sale. -
It would be difficult to hold the second purchase good; or take a title against the officer who first levied, and attempted to sell to the Floyds. The officer field the possession lawfully, and as a bailee, could recover it from another. The lawful possession was transferred to the' Floyds; even admitting 1 the sale was void. They hold for the officer, with the levy fixed on the slaves; their possession is prima facie lawful, and they are authorized to recover on their possession, unless the judgment and execution under which they claim are fraudulent, and for this reason void, which destroys- the force of the levy.Aside from the sale, the Floyds bad the same right to recover the slaves the officer would have had from whom Miley obtained the possession.
But this consideration is aside from the true question.’ •\The saffi vested the title to the slaves in-the purchaser, and if the officer had refused to deliver, the property on payment to him of the money bid, I think there is no doubt the purchaser could have recovered the slaves in detinue, without having obtained a bill of sale from the officer. He took title aside from the register acts, and transferred it without reference to them, nor does any one register act, requiring titles to goods to be registered, contemplate- a record title, made up of judgment-, execution, *498 j€Vy andgjde. In this part of the charge the circuit court J r ° erred.
On the last objection, the deputy sheriff could not make a bill of sale, of course nothing further need be said, as ipy opinion is, the defendant took title without any, if the title of the Floyds was void.
Judgment reversed.